IN AND FOR THE UNITED STATES OF AMERICA
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA )
    Plaintiff, )
 )
 )
vs. ) CASE NUMBER 8:02-CR-509-T-23TBM
 )
 )
JEFFREY W. CANATSEY, )
    Defendant. )
 )
_____ )

## MOTION TO MODIFY
## JUDGEMENT AND COMMITMENT ORDER

**COMES NOW** the defendant, **JEFFREY W. CANATSEY**, Pro Se, in the above styled case and respectfully petitions the Court to grant this MOTION TO MODIFY JUDGEMENT AND COMMITMENT ORDER. The Defendant states the following in support:

1). On February 25, 2003, this Defendant entered a plea of guilty on counts one (1) thru nine (9) under **Section 2422 (b) and Section 2252A (a)(2)(A) of Title 18 of the United States Code.**

2). On June 19, 2003, this Defendant was sentenced by this Honorable Court to a term of 37 months incarceration.

3). The Defendant was sentenced under the USSG, level 21, Criminal History Category 1.

4). This Defendant has never been arrested prior to this offense for any criminal matter.

5). At sentencing, the Defendant had a number of his family testify on his behalf: Jean Canatsey (Mother), Verner Canatsey (Father), Sarah Canatsey (Sister), Laura Nuetzman (Sister), Robert Davis (Uncle), Christopher Canatsey (Son), Tina Canatsey (Spouse), and Krystine Canatsey, the Defendants daughter, who is the basis and cause for this Motion. **(Sentencing Transcript Pg. 9-22)**

6). During the testimony of Tina Canatsey, the spouse, she stated "I knew in my heart, two or three weeks after the October 9th incident, that nothing had tooken place with my daughter and her father." **(Sent. Trans. Pg. 9 lines 16-19)** "And I made a misjudgement in not allowing--or in pursuing the fact that he shouldn't have contact with his children." **(Sent. Trans. Pg. 10 lines 6-8)** The witness also stated that " --he has been extremely honest with everything, honest until it hurts, with me and his children." **(Sent. Trans. Pg. 10 lines 13-15)** And "--he did what he did, he took responsibility immediately for it, but he never touched his children." **(Sent. Trans. Pg. 10 lines 21-23)** " I made some horrible mistakes in not letting him be able to have contact with his children. **(Sent. Trans. Pg. 11 lines 2-4)** " I would implore the Court to think about the fact that this family needs to heal, his children need to heal with him."**(Sent. Trans. Pg. 11 lines 5-7)** And finally "--he has been compliant with every single thing. He has been completely honest with every single thing." **(Sent. Trans. Pg. 11 lines 9 and 10)**

7). This true testimony contradicts allegations that were previously made to the F.B.I. by the Defendants spouse.

8). Those allegations made to the F.B.I., along with repeated restraining orders resulted in the separation of the Defendant and his children causing them to suffer from emotional stress and the need for counseling that was required by both of the children.

9). At the sentencing hearing, Krystine Canatsey, the Defendants daughter, stated: "I have never had a chance to speak with anybody before since this has all started. Nobody would listen to me because I'm 14. And I would talk to people and they would just take my words and change them around, specifically the F.B.I. They wouldn't listen to me. They wouldn't believe what I had to say. They tried to say that my dad molested me. They tried to take the words and make me say them. But I'm the only one that knows it never happened. And I would swear on my life that it never happened. And my dad has been there for me my whole life. **(Sent. Trans. Pg 16 lines 18-25 and Pg. 17 lines 1 and 2)**

10) In a letter to this Honorable Court, Krystine Canatsey states "I understand that my mother was trying to look out for me but she only made things worse, for the simple fact that nothing ever happened between my dad and I. I wouldn't feel so strongly about being with my dad if I thought that it was an unsafe choice." **(Exhibit 1.)**

11) The Court accepted the statements of the witness to be true and correct at the time of the sentencing. **(Sent. Trans. Pg. 17 lines 3and 4)**

12) The Court sentenced this Defendant at the low end of the guidelines (37) months partly due to the fact that "The United States is not asking for anything else" **(Sent. Trans. Pg. 17 lines 21-25 and Pg. 18 lines 1-4).** Even the opinion of the Court was that this Defendant would not resume the activities that caused the indictment.

13) This response was in regard to the request for leniency made by a witness **(Sent. Trans. Pg. 17 lines 18 and 19).**

14) The Court stated that "But not even Congress----makes the assessment that someone has not behaved well in other parts of their life or that, once they pay their debt for doing what they did, they won't behave well thereafter and resume their rightful place both in the community and in their **family** and perhaps in the eyes of their spouse and their family and others". **(Sent Trans Pg. 15 lines 24 and 25 thru Pg. 16 line 5).**

15 The Court also stated "--I have had a whole bunch of these cases. And I would put you in the category of people that I think would do fine if I let you go. **(Sent. Trans. Pg. 29 lines 3-5)** and "His wife noted a minute ago that no one is suggesting that he has abused his children, which is fine and commendable and suggests that the statements that have been made about his duties as a father are all accurate." **(Sent. Trans. Pg. 14 lines 17-20).**

**Wherefore,** based on the foregoing, this Defendant would petition this Honorable court to modify it's Judgement and Comitment order. Specifically, **page 4** where it states as follows:

"The Defendant shall have no direct contact with minors (under the age of 18) without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate including schools, daycare centers, theme parks, playgrounds, etc." **(J&C page 4 item 5)** The Defendant prays the Court to include the wording: "Other than his daughter Krystine." This modification should be made in the interest of promoting family, the child's well being and mental health, and the relationship of this Defendant and his other child. (It should be known that the child is presently being cared for by the Defendants sister in California (as the mother has relinquished custody) and has no other family in the area. Returning to Florida and living with her father in Casselberry would allow the child to graduate high school with the support of much family and the relationships of many childhood friends) As seen in **exhibit 1,** the child "feels that it is necessary (for me) to finish high school under my dad's roof." The child will be 17 years and six months old at the time of the Defendants release from prison. As witnessed by the Court, the child has never been in harms way by the father, in fact, "he did everything that a wonderful father should do....my father was forced to take over the role of both mother and father." **(Exhibit 1)** The defendant has done everything in his power from prison to remain active in the child's life by staying in constant contact with her, her care givers and other family members. By his own choice, the Defendant enrolled in a parenting class in order to stay tuned to the issues that his children may be experiencing, and instruction on how to best handle those issues under the present circumstances. A successful completion of this extensive 12 week course, **(Exhibit 2)**, has enabled this Defendant to better prepare for his release and subsequent re-entry into the community and the family.

Respectfully submitted this 20th day of April, 2005.

Jeffrey W. Canatsey
Defendant Pro Se
Reg # 40786-018
Federal Correction Complex
P.O. Box 1031
Coleman, FL. 33521-1031

Exhibit 1

123 Shapley Way
San Clemente, CA 92672
March 30, 2005

Honorable Judge Steven D. Merryday
U.S District Court
801 N. Florida Ave.
Tampa, Fl 33602

Dear Judge Merryday:

The reason I am writing this letter to you is for a very important reason. My father, Jeffrey W. Canatsey, gets out of prison in February of 2006. At that time I will be finishing my junior year of high school, preparing for my last year. I have been living without my father since the beginning of 8th grade and I strongly feel that it is necessary for me to finish high school under my dad's roof.

Prior to my dad's arrest, he did everything a wonderful father should do. He was there for my brother and me in every aspect of our lives. At that point in time my mom was having to deal with her own problems. She was often out drinking and using drugs, and my father was forced to take over the role of both mother and father. Although it was hard for me at the time, it was important that he disciplined us as he did. He had high expectations and was always there to help us with homework as often needed.

I have fully considered the reasons the court may not want me to see or live with my dad. My dad's charge of child pornography could be enough to say that I can't be with him. However, his crime never had anything to do with me. It was brought up by my mother that there was a chance that he molested me when I was younger. That is why when he was on house arrest I was not allowed to see him. I understand that my mom was trying to look out for me but she only made things worse, for the simple fact that nothing ever happened between my dad and I. I wouldn't feel so strongly about being with my dad if I thought it was an unsafe choice. I understand that he will be on probation. I know that is something we can work through together.

Since the day my father got in trouble he has been very apologetic towards my brother and me. I feel that the guilt my dad has gone through has been a punishment all in its own. I have had a hard time since he has been in prison. It would be even more difficult if he were out and I couldn't see my own dad. I love my dad with all my heart and I never want to lose him again. Please don't keep me away from him any longer than I have been.

Sincerely,

*Krystine Canatsey* (signature)

Krystine Canatsey



# Certificate of Achievement

On this day November 30, 2004

## Jeffrey Canatsey

for successfully meeting the requirements of the Education Department

ICC Coleman - Low

## Parenting

_November 30, 2004_
Date

_Deborah Lindsay_
Deborah Lindsay,
Parenting Coordinator

Exhibit 2

## CERTIFICATE OF SERVICE

I, Jeffrey Canatsey, under the penalty of purjury, certify that the foregoing item titled **"MOTION TO MODIFY JUDGEMENT AND COMMITMENT ORDER"** has been sent first class, pre-paid mail by the United States Postal Service to the parties listed below:

Paul I Perez
U.S. Attorney's Office
Middle District of Florida
Tampa Division
Federal Building
400 N Tampa St. STE. #200
Tampa, FL 33602

Sworn to on this 20th day of April, 2005.

Jeffrey W. Canasey #40786-018
Defendant Pro Se
Federal Correction Complex
P.O. Box 1031
Coleman, FL 33521-1031